**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CRAIG SUCHIN,** | * | |
| **Plaintiff,** | * | |
| v. | * | **Civ. No. JKB-23-01243** |
| **FRESENIUS MEDICAL CARE HOLDINGS, INC.,** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM</u>

Plaintiff Dr. Craig Suchin, by and through his wife and power of attorney Andrea Suchin, has brought this action against his former employer, Fresenius Medical Care Holdings, Inc. ("Fresenius") alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Two motions are pending before the Court. First, Fresenius has moved to dismiss two of three counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8.) Second, Suchin has moved for leave to file a surreply in opposition to the Motion to Dismiss, and to strike an argument that Fresenius raised for the first time in its reply brief ("the Surreply and Strike Motion"). (ECF No. 30.) The Court will consider these motions in reverse order. For the following reasons, the Surreply and Strike Motion will be granted with respect to the request for leave to file a surreply and denied as moot with respect to the request to strike. As for the Motion to Dismiss, Suchin adequately alleges that Fresenius breached its fiduciary duty, but fails to show that he is entitled to the remedies of reformation, equitable estoppel, or surcharge. Accordingly, the Motion to Dismiss will be granted in part and denied in part.

## I.   FACTUAL BACKGROUND[1]

Suchin, a former physician with board certification in radiology, was employed by Fresenius and its predecessor corporation from 2010 to 2021.  (ECF No. 1 at 1.)  Fresenius is a leading provider of services for patients with renal disease, with over 30,000 employees in North America.  (*Id.* at 2.)   In 2021, at the age of 54, Suchin was diagnosed with behavioral frontotemporal dementia.[2]  (*Id.*)  He therefore retired from his job the following year.  (*Id.* at 2.)[3] The present dispute arose when Suchin and his wife, Andrea, began applying for and inquiring about long-term disability ("LTD") and life insurance benefits in 2021, only to discover that those benefits were much less generous than they had initially understood them to be.

While employed at Fresenius, Suchin was a participant in both Fresenius's LTD plan and its life insurance plan.  (*Id.* at 3.)  Fresenius was and is the plan sponsor and plan administrator of both plans, as those terms are defined in ERISA §§ 3(16)(B) and 3(16)(A).[4]  (*Id.* at 3–4.)  ERISA required Fresenius to provide Suchin a "summary plan description" ("SPD"), which is "an important document that tells participants what the plan provides and how it operates," within 90 or 120 days (depending on whether the plan is new or already-existing) of when a participant becomes covered.  (*Id.* at 4–5.)  Fresenius was also required to provide Suchin with a "summary of material modification" ("SMM"), anytime there was a material change to the plan.  (*Id.* at 6.)

---

[1] For the purposes of evaluating a motion to dismiss, the Court assumes the following facts alleged in the plaintiff's complaint are true.  *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) ("We accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff.").

[2] Frontotemporal dementia is a progressive neurological disease that causes symptoms including memory loss, erratic behavior, and difficulty communicating.  There is currently no known cure.  *What Are Frontotemporal Disorders? Causes, Symptoms, and Treatment*, National Institute on Aging, https://www.nia.nih.gov/health/frontotemporal-disorders/what-are-frontotemporal-disorders-causes-symptoms-and-treatment.

[3] The Complaint alleges that Suchin was employed by Fresenius and its predecessor corporation "from 2010 to 2021" but also alleges that "[i]n June 2022, Plaintiff ceased his joint employment with Defendant."  (ECF No. 1 at 1–2.)  The exact date at which Suchin stopped working for Fresenius does not appear to be material or disputed for the purposes of resolving the Motion to Dismiss.

[4] "[I]n keeping with the trend in this practice area," the Court will refer to ERISA provisions "by their ERISA designation, not by their place in the U.S. Code."  *Rose v. PSA Airlines*, 80 F.4th 488, 494 n.2 (4th Cir. 2023).

Despite these obligations, Fresenius never delivered any LTD benefit plan SPD or SMM to Suchin during the time of his employment, whether electronically or by paper.  (*Id.* at 7–8.) Furthermore, the plan was amended in 2019, but Fresenius did not furnish Suchin with an SMM after this amendment became effective.  (*Id.* at 9.)

In 2012, after the birth of their son, Suchin and Andrea decided to amend their wills.  (*Id.*) At that time, they discussed purchasing additional disability benefit insurance coverage, but decided not to do so.  (*Id.*)  They reached this decision because Suchin "told his spouse that his employer had informed him that his long-term disability coverage was 60% of his salary," which at that time amounted to $28,000 per month in LTD benefits.  (*Id.*)  Suchin "did not purchase additional long-term disability coverage because he and his spouse decided that 60% of his salary was adequate."  (*Id.*)

In 2021, after Suchin's dementia diagnosis, Andrea began the process of applying for LTD benefits on Suchin's behalf.  (*Id.* at 10.)  Andrea contacted the plan's claims processor, New York Life Group Benefit Solutions ("New York Life").  (*Id.*)  New York Life informed her that Suchin's LTD benefits were capped at $10,000 a month, not the much more generous $28,000 she had expected.  (*Id.*)  Additionally, Suchin and Andrea learned that the benefits were further offset by certain social security disability payments.  (*Id.* at 25.)  This social security offset reduced the benefits by an additional 40%.  (*Id.*)

In November 2021, Suchin and Andrea enrolled in LTD benefits for 2022 through Fresenius's online employee benefits website.  (*Id.* at 10–11.)  The website stated that Suchin was enrolled in coverage worth "60% of salary" and contained no information about a benefits cap or offsets for social security payments.  (*Id.* at 11–12.)

Suchin makes similar allegations regarding his life insurance benefits.  He never received a copy of the life insurance plan or an SPD about the plan.  (*Id.* at 12.)  At some unspecified time, when he "went on-line to select the life insurance benefit," he selected the "Basic Life" option, which was stated as "Salary x 2," with no statement of cap or limitation.  (*Id.*)  As a result of his understanding that his life insurance policy would provide a payout of twice his annual salary, Suchin did not supplement it.  (*Id.* at 13.)  Fresenius later provided inconsistent information regarding Suchin's life insurance policy, at one time saying the benefit was $1,120,000, and another time saying the benefit was capped at $400,000.[5]  (*Id.*)

On April 2, 2022, Suchin, through counsel, requested various plan documents from Fresenius.  (*Id.*)  Suchin sent follow-up letters dated July 11, August 17, and October 14, 2022.  (*Id.* at 14–17.)  After each letter, Fresenius failed to produce the requested documents.  (*Id.*)  After Suchin's counsel sent another letter dated November 3, 2022, Fresenius finally responded by sending many, but not all, of the requested plan documents.  (*Id.* at 18–19.)

Meanwhile, Suchin applied for LTD benefits and received a determination from New York Life that he was totally disabled in February 2022.  (*Id.* at 20.)  Suchin, through counsel, appealed New York Life's imposition of the $10,000 per month cap on LTD benefits.  (*Id.*)  New York Life denied that appeal by letter dated July 26, 2022.  (*Id.*)

Suchin alleges in Count I that Fresenius breached its fiduciary duty under ERISA by failing to provide adequate documentation and explanation of insurance benefits, and by providing misleading information about the plan.  (*Id.* at 21–24.)  Specifically, Suchin alleges that Fresenius failed to provide an SPD for the LTD benefits plan and failed to provide other plan documents,

---

[5] The current status of Suchin's life insurance policy is unclear.  The Complaint alleges that Suchin's life insurance policy is capped at $400,000, but in briefing Suchin states that "Plaintiff does not have a $400,000 life insurance policy" and states that he is entitled to equitable relief "includ[ing] an order that the Defendant purchase a $400,000 life insurance policy for Plaintiff."  (ECF No. 30-2 at 7.)

such as those detailing the available benefits and procedures for claims. (*Id.*) As a result of Fresenius's misleading and inaccurate information, Suchin alleges he was led to believe that his LTD benefit was 60% of his salary without any limitations or caps. (*Id.* at 24.) But, as he and his wife learned when they applied for benefits after Suchin's diagnosis, LTD benefits were in fact capped at $10,000 per month and further offset by certain Social Security benefits. (*Id.* at 24–26.) Suchin alleges that he "would have purchased additional disability benefit coverage had the offset information been properly disclosed." (*Id.* at 25.)

Suchin similarly alleges in Count II that he was provided incomplete and misleading information about his life insurance coverage. (ECF No. 26–30.) Suchin alleges he was led to believe that his life insurance benefit was twice his annual salary, which would total $1.121 million as of 2022. (*Id.* at 13.) But, after Suchin retired, Fresenius claimed that the maximum life insurance benefit available to him was $400,000. (*Id.*) By the time Suchin learned of this limitation, it was (and remains) too late to purchase a private life insurance policy because of his terminal illness. (*Id.*)

Counts I and II, brought pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), allege that Fresenius breached its fiduciary duty. (ECF No. 1 at 21–22, 27.) Suchin seeks equitable relief including surcharge, reformation, and estoppel. (ECF No. 1 at 26, 30.) Count III alleges that Freseniuss failed to produce plan documents in violation of ERISA § 502(c)(1)(B). (*Id.* at 31–33.) Fresenius moves to dismiss Counts I and II, but has not moved to dismiss Count III.

## II.    SURREPLY AND STRIKE MOTION

Before turning to the merits of the Motion to Dismiss, the Court must first resolve a derivative dispute that arose during briefing. Fresenius raised two new arguments for the first time in its Reply brief. (ECF No. 29.) First, Fresenius argued that Suchin's request for a surcharge

under Section 502(a)(3) is foreclosed by *Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023). Second, Fresenius argued that Count II should be dismissed as unripe. Suchin has moved for leave to file a surreply to address Fresenius's *Rose* argument, and has asked the Court to strike Fresenius's ripeness argument. For the following reasons, the Court will grant the motion for leave to file a surreply and deny as moot the motion to strike Fresenius's ripeness argument.

### A.  Motion for Leave to File Surreply

Suchin seeks leave to file a surreply to respond to Fresenius's *Rose* arguments. The Fourth Circuit issued its decision in *Rose* on September 12, 2023, between the date of Suchin's Response in opposition to the Motion to Dismiss (September 6), and Fresenius's Reply (October 19).

Although surreplies are highly disfavored in this District, *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 722 (D. Md. 2017), the Court finds that granting leave is appropriate, as the *Rose* decision was issued in the midst of briefing, and Fresenius concedes that the surreply is warranted. (*See* ECF No. 31 at 1.) Accordingly, the Court will grant Suchin leave to file the surreply attached to the Surreply and Strike Motion. (ECF No. 30-2.) The Court will consider the arguments in the surreply when considering the Motion to Dismiss.

### B.  Motion to Strike

Suchin asks the Court to strike Fresenius's argument that Count II of the Complaint (concerning the life insurance plan) is not ripe because Fresenius raised the argument for the first time in its Reply brief, and that there was no good cause not to raise it earlier. (ECF No. 30-2 at 6.) This motion will be denied as moot because the ripeness argument fails on the merits.

"The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). Fresenius raised its ripeness argument for the first time in its

reply brief.  Even worse, it has disingenuously attempted to cast a plainly unrelated argument in its opening brief as one about ripeness.[6]  In such a circumstance, the Court would ordinarily be well within its discretion to strike the argument.

However, the analysis cannot stop there.  Ripeness implicates the court's subject matter jurisdiction, *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019), and "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court," *Brickwood Contractors, Inc. v. Data Engineering, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004).  Thus, Fresenius cannot have waived the ripeness argument, as it was never its argument to waive.  *See Hamilton v. Pallozzi*, 165 F. Supp. 3d 315, 320 n.8 (D. Md. 2016) (rejecting a plaintiff's assertion that it was "too late in the day for Defendants to suddenly claim that their dispute with [Plaintiff] isn't ripe" (alteration in original)).  Accordingly, the Court is bound to consider Fresenius's ripeness argument, its confounding briefing practices notwithstanding.

The doctrine of ripeness prevents "judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'"  *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947)).  To evaluate ripeness, the Court must "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Id.* (quotation omitted).  "A case is fit for judicial decision

---

[6] Fresenius argues that it *did* in fact raise the ripeness argument in its opening brief.  (ECF No. 31 at 2.)  This argument might have worked, had the Court not actually read the opening brief.  In that brief, Fresenius never raised an argument about ripeness, nor did it come close.  The portion of the opening brief to which Fresenius cites is not about ripeness at all.  Instead, in that portion of the brief, Fresenius argues that because Suchin has not received any determination about the amount of his life insurance policy, his claim "must be brought under ERISA § 502(a)(1)(B)" rather than under §502(a)(3) as is pled in the Complaint.  (ECF No. 8-1 at 21.)  Fresenius's argument that Suchin's claim should have been brought under § 502(a)(1)(B) rather than under § 502(a)(3) does not sound in ripeness.  Indeed, it would be logically impossible for this argument to be about ripeness.  If a claim is not ripe, then an Article III court has no power to hear that claim, *see Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013); a plaintiff could not magically turn an unripe claim into a ripe one by bringing it under a different statutory provision.

when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* On the other hand, a plaintiff's claim is not ripe if the alleged injury depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 592 U.S. ___, 141 S. Ct. 530, 535 (2020) (quotation omitted).

Fresenius argues that Count II is not ripe because Suchin has received conflicting information about the amount of his life insurance and whether he even has life insurance, and that no determination has yet been made. (ECF No. 29 at 17.) According to Fresenius, the claim is not ripe "because it depends on future contingent events, including an application for life insurance benefits and a determination of that application." (*Id.* at 18.)

In support of this argument, Fresenius cites to three unpublished district court opinions from outside of this District. All of them are distinguishable from this case, because in each of those cases, the court found a plaintiff's claim to not be ripe when it was contingent on whether the plaintiff was actually disabled within the meaning of the defendants' insurance policies. *Worsley v. Aetna Life Ins. Co.*, Civ. No. 3:07-500-RJC, 2009 WL 1794430, at *2 (W.D.N.C. June 23, 2009); *Hague v. Hallmark Cards, Inc.*, Civ. No. 10-2166-RDR, 2010 WL 11564953, at *2 (D. Kan. July 2, 2010); *Smith v. Life Ins. Co. of N. Am.*, Civ. No. 1:13-2047-VEH, 2014 WL 12899901, at *5–6 (N.D. Ala. July 3, 2014).

Here, by contrast, the parties do not dispute that Suchin is fully disabled and suffers from a terminal illness; the only questions are what representations Fresenius made to him about life insurance and the amount—if any—to which Suchin's beneficiaries will be entitled after his death. Additionally, unlike the plaintiffs in the cases on which Fresenius relies, Suchin has alleged an injury that has already occurred. Specifically, Suchin alleges that Fresenius led him to believe that his life insurance policy was twice his annual salary, and that in reliance on this erroneous belief,

he decided not to purchase supplemental life insurance.  (ECF No. 1 at 13, 29.)  By the time Suchin

learned that his policy was capped at $400,000 (or perhaps does not exist at all), it was too late to

purchase supplemental insurance because of his illness.  (*Id.* at 13.)  No further contingencies need

to occur before the Court is ready to consider the merits of this claim.  *See Sullivan-Mestecky v.

Verizon Commc'ns Inc.*, 961 F.3d 91, 103 n.44 (2d Cir. 2020) (holding that "a plaintiff's non-

procurement of alternative coverage" is a cognizable injury under ERISA).

The hardship to the parties also weighs heavily in favor of considering Suchin's claim now.

If the Court were to accept Fresenius's position, then Suchin would not be able to obtain judicial

resolution of the dispute over his life insurance policy during his lifetime.  He would thus be

deprived of critically important information about what benefits (if any) his beneficiaries will

receive after his passing.  This would be an intolerable hardship to impose.  For these reasons, the

Court concludes that Fresenius's ripeness argument is meritless.  Accordingly, Suchin's motion to

strike this argument will be denied as moot.

## III.    MOTION TO DISMISS

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept

all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the

plaintiff's favor."  *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).  To survive a motion to

dismiss, the complaint "must include 'sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility" when the plaintiff pleads facts that allow the court to "draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S at

678.  "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further

factual enhancement'" will not suffice.  *Id.* (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Fresenius raises several arguments in support of its Motion to Dismiss, which the Court will address in turn.  The Court holds: (1) that Count I was properly brought as a breach of fiduciary duty claim under ERISA § 502(a)(3); (2) that Suchin adequately pleads that Fresenius is a fiduciary with respect to the LTD and life insurance plans and that Fresenius breached its fiduciary duties with respect to these plans; and (3) that Suchin fails to show that he is entitled to the remedies of reformation, equitable estoppel, or surcharge.  Accordingly, Counts I and II will be dismissed without prejudice with respect to his claims for reformation and equitable estoppel, and will be dismissed with prejudice with respect to his claim for surcharge.

## A.  Whether Counts I and II Are Properly Brought under ERISA § 502(a)(3)

Fresenius first argues that Count I should be dismissed because—although it is styled as a claim for breach of fiduciary duty under ERISA § 502(a)(3)— it is in substance a claim that should be brought under Section § 502(a)(1)(B).  This argument is unavailing.

ERISA provides a "carefully crafted and detailed enforcement scheme," *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993), including several private causes of action, two of which are relevant here.  First, ERISA § 502(a)(1)(B) provides that a participant may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Alternatively, § 502(a)(3) provides that a beneficiary may bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

In short, the former provision, § 502(a)(1)(B), allows participants to obtain the benefits to which they are entitled under the terms of the plan.  The latter provision, § 502(a)(3), is a "catchall

which acts as a safety net, offering appropriate equitable relief for injuries caused by violations that § [502] does not elsewhere adequately remedy." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 105 (4th Cir. 2006) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)) (alterations and quotations omitted).  The paradigmatic instance in which a plaintiff would invoke this latter provision is a situation in which the plaintiff is concededly *not* entitled to relief under the plain language of the plan (and thus § 502(a)(1)(B) would be of no use), but nevertheless deserves an equitable remedy because (for example) the defendant misled the plaintiff into thinking the plan was more generous than it in fact was.

In *Korotynska*, the plaintiff brought an action for equitable relief under ERISA § 502(a)(3) but conceded that she could have brought her claim under § 502(a)(1)(B), because in essence what she sought was a review of the wrongful denial of her benefits.  474 F.3d at 106.  On these facts, the Fourth Circuit affirmed the dismissal of her § 502(a)(3) claims because § 502(a)(1)(B) provided her with adequate relief.  *Id.* at 106–107.  In reaching this conclusion, the court relied on *Varity*, which held that equitable relief is normally not appropriate when another ERISA provision provides adequate relief for the beneficiary's injury.  *Id.*

*Korotynska* does not bar Suchin's claims.  That case "involved a plaintiff's attempt to 'repackage' a Section 502(a)(1)(B) claim for denial of benefits into a claim for injunctive relief under Section 502(a)(3)."  *England v. Marriott Int'l*, 764 F. Supp. 2d 761, 779 (D. Md. 2011). Further, the *Korotynska* court was careful to state that the opinion "preserves the true purpose of § [502(a)(3)]: to authorize individual equitable relief . . . where . . . ERISA's other provisions do not afford adequate relief."  474 F.3d at 108.

Here, Suchin avers that he "is not seeking to recover benefits stated in the LTD plan, because the plan does not offer him a remedy."  (ECF No. 26 at 3.)  Importantly, Suchin does *not*

seek benefits he claims he was wrongfully denied; instead, he claims that he was "misled by Defendant as to the material terms and conditions of its disability plan" and seeks to estop Fresenius from enforcing the terms of the plan.  (ECF No. 1 at 25–26.)  Thus, § 502(a)(1)(B) would not provide an "adequate" remedy, *Korotynska*, 474 F.3d at 107, because it would only entitle Suchin to benefits under the plan terms, not the more generous benefits he claims were promised to him.  Suchin is not trying to "repackage" a § 502(a)(1)(B) claim as a fiduciary duty claim; rather, he is bringing a fiduciary duty claim under the proper statutory vehicle.  Such a claim continues to be viable after *Korotynska*.  *See England*, 764 F. Supp. 2d at 780 (allowing a breach of fiduciary duty claim under § 502(a)(3) to proceed because the plaintiffs could not receive adequate relief under § 502(a)(1)(B)).

For similar reasons, Suchin's § 502(a)(3) claim as to his life insurance policy is also not barred by *Korotynska*, as he "is *not* seeking the life insurance benefits that Defendant claims are provided in, and limited in amount by, plan documents which were never provided to Plaintiff." (ECF No. 26 at 26 (emphasis in original).)  Rather, he seeks equitable relief that would entitle him to the more generous life insurance benefits he alleges he was promised.[7]

### B.  Whether Breach of Duty is Adequately Alleged

Fresenius next argues that Suchin has failed to adequately allege a breach of fiduciary duty.

In order to establish a claim for breach of fiduciary duty based on alleged misrepresentations, a plaintiff must show: 1) that a defendant was a fiduciary of the ERISA plan, 2) that a defendant breached its fiduciary responsibilities under the plan, and 3) that the participant is in need of injunctive or other appropriate equitable relief to remedy the violation or enforce the plan.

---

[7] Fresenius' related administration exhaustion argument also fails.  Fresenius argues that Count II should be dismissed because it is in essence a claim to "clarify his rights to future benefits under the terms of the plan" under § 502(a)(1)(B) and is therefore subject to that provision's exhaustion requirements.  *See Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 82 (4th Cir. 1989).  However, as the Court has explained, Count II is properly brought as a breach of fiduciary duty claim under § 502(a)(3).  This exhaustion requirement "does not apply to a claim for breach of fiduciary duty as defined in ERISA."  *Smith v. Sydnor*, 184 F.3d 356, 365 (4th Cir. 1999).  Accordingly, Suchin was not required to exhaust his administrative remedies before filing suit.

*Adams v. Brink's Co.*, 261 F. App'x 583, 589–90 (4th Cir. 2008). The Court will first examine Fresenius's status as a fiduciary and the nature of its fiduciary duty, and then examine Suchin's claims. The Court concludes that Suchin adequately alleges that Fresenius is a fiduciary with respect to the plan, and that Fresenius breached its fiduciary duty.

### 1. Fresenius's Fiduciary Status

A threshold question in any breach of duty case is whether the "party charged with breach is, in fact, a fiduciary." *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 275 (4th Cir. 2019) (quotation omitted). ERISA contemplates two types of fiduciaries: (1) a "named fiduciary," which is the fiduciary "who is named in the plan," *id.* (quoting ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2)); and (2) a "functional fiduciary," which encompasses anyone with discretionary responsibility over the plan. *Id.* To adequately allege a defendant's fiduciary status, an allegation that the defendant is a named fiduciary and plan administrator suffices. *Id.* at 278.

Here, Suchin has alleged that Fresenius was the plan sponsor (as defined in ERISA § (3)(16)(B)) and plan administrator (as defined in ERISA § (3)(16)(A)) of the LTD and life insurance plans. (ECF No. 1 at 2–3.) Suchin also alleges that Fresenius is a "named fiduciary" with respect to both plans. (ECF No. 1 at 22.) These allegations are enough to allege Fresenius's status as a fiduciary. *See Dawson-Murdock*, 931 F.3d at 278 (holding that allegations that the defendant was a plan administrator and named fiduciary sufficed to plausibly allege the defendant's fiduciary status).

### 2. The Nature of Fresenius's Fiduciary Duty

When Congress enacted ERISA, it incorporated the common law of trusts to define the scope of a fiduciary's obligations. *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001). Under the common law of trusts, a trustee is under a duty to inform, which "entails

not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Id.* (quotation omitted).  This duty to inform "is the core of a fiduciary's responsibility" under ERISA.  *Id.* (quotation omitted); *see also Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 471 (7th Cir. 2010) ("The most important way in which the fiduciary complies with its duty of care is to provide accurate and complete written explanations of the benefits available to plan participants and beneficiaries.").

"[A]n ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent— especially when that misunderstanding was fostered by the fiduciary's own material representations or omissions."  *Griggs*, 237 F.3d at 381.  Thus, a plaintiff need not necessarily identify a misstatement; rather, "a failure to speak, or 'omission' can be the basis of a breach of fiduciary duty claim when the fiduciary knows that not disclosing the material information could be harmful to the beneficiary."  *Damiano v. Inst. for In Vitro Scis.*, Civ. No. PX-16-0920, 2016 WL 7474535, at *4 (D. Md. Dec. 29, 2016); *see also Breyan v. U.S. Cotton, LLC Long Term Disability Plan*, Civ. No. 3:12-491-RJC-DCK, 2013 WL 5536795, at *8 (W.D.N.C. Oct. 7, 2013) ("Plaintiff need not allege a specific misrepresentation but only demonstrate that Defendant had a duty to inform Plaintiff of certain information and failed to do so.").

An important facet of the duty to inform is ERISA's requirement that plan administrators provide an SPD to plan participants.  *See* ERISA §§ 102, 101(a).  The SPD must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  *Id.* § 102(a)*.*  The basic objective of the SPD is "clear, simple communication."  *Cigna Corp. v. Amara*, 563 U.S. 421, 437 (2011).  The plan administrator

must use measures "reasonably calculated to ensure actual receipt" of the SPD by plan participants.

*Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 203 (2d Cir. 2003) (quoting 29 C.F.R. § 2520.104b–1(b)(1)).  The SPD is crucial to ERISA's statutory goal of "requiring the disclosure and reporting" of plan information "to participants and beneficiaries," ERISA § 2(b); it is "the employee's primary source of information regarding employment benefits."  *Aiken v. Pol'y Mgmt. Sys. Corp.*, 13 F.3d 138, 140 (4th Cir. 1993) (quotation omitted).

In short, Fresenius was under a fiduciary duty both to refrain from misrepresentations and to provide adequate, understandable, and complete information about plan terms—including an SPD—to plan participants such as Suchin.

### *3.  Breach of Duty—Count I*

Suchin has adequately alleged that Fresenius breached its fiduciary duty with respect to the LTD plan.

As an initial matter, the Court agrees with Fresenius that Suchin has not alleged that Fresenius made any specific misrepresentation tied to the alleged injury of forgoing the opportunity to purchase supplemental insurance.  The closest Suchin comes to alleging a specific misrepresentation is his allegation that Suchin "told his spouse that his employer had informed him that his [LTD] coverage was 60% of his salary."  (ECF No. 1 at 9.)  Because Suchin was "jointly employed" by Fresenius and an unspecified other employer, (ECF No. 1 at 2), the Court cannot readily infer whether Suchin's statement referred to Fresenius or the other employer.  Furthermore, Suchin does not actually allege that the employer made this statement, but rather that he told his wife that his employer told him this.  This is simply too vague an allegation to support an inference of an affirmative misrepresentation.  *See Jones v. Canal Wood, LLC*, Civ. No. 5:18-274-FL, 2019 WL 1370847, at *10 (E.D.N.C. Mar. 26, 2019) (holding that a § 502(a)(3) plaintiff

failed to allege misrepresentations when the complaint did not identify "who made alleged misrepresentations to them, when they were made, nor the actual contents of the statements").[8]

Nevertheless, Suchin's failure to allege specific misrepresentations is not fatal to his breach of fiduciary duty claims. The Fourth Circuit has held that "a plan administrator acts in a fiduciary capacity when it conveys (or fails to convey) material information to a plan participant concerning the retention of eligibility for a benefit plan when that administrator is aware that the participant wishes to maintain his participation therein." *Dawson-Murdock*, 931 F.3d at 279. When—as here—the complaint alleges that a fiduciary failed to provide information it was under a duty to disclose, an action for breach of duty is viable.

Here, Suchin has alleged that Fresenius was the plan administrator, and the extensive information Fresenius allegedly failed to provide was clearly material, given that it covered such important topics as the process for claims and the criteria for eligibility in the plan. Additionally, although the Complaint does not expressly allege what Fresenius knew, the Court can reasonably infer that Fresenius knew that Suchin wished to remain enrolled in his life insurance and LTD benefits from the fact that he chose to enroll in them.

Further, Suchin has adequately alleged that Fresenius's failure to provide an SPD and other plan documents related to his LTD benefits constituted a breach of fiduciary duty to inform. Fresenius allegedly never furnished Suchin with an SPD regarding the LTD plan, despite its statutory obligation to do so, and also failed to provide a plan document setting forth, inter alia:

---

[8] Likewise, Suchin alleges that Fresenius's employee benefits website stated in 2021 that his LTD benefits were 60% of his salary, without any cap or reduction. (ECF No. 1 at 10–12.) However, by that point it was already too late to purchase additional LTD coverage, so that misstatement cannot have caused him harm. *See Goddard v. Boilermaker-Blacksmith Nat'l Pension Tr.*, Civ. No. 22-06069-SRB, 2022 WL 18542463, at *4 (W.D. Mo. Sept. 6, 2022) (holding that a misstatement could not give rise to a breach of fiduciary duty claim when the misstatement occurred after the date of the alleged injury). Strangely, Suchin stated in briefing that he "will promptly amend his complaint to also state, upon information and belief" that the website contained these misrepresentations from 2012 through 2021" (ECF No. 26 at 15), but has not actually amended his complaint to incorporate these allegations. These allegations, if included in an amended complaint, might impact this Court's analysis.

- The "internal claims and appeal process";

- Contact information for plan administrators and trustees;

- "A statement identifying the circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide";

- The procedures for redress of denied claims; and

- The statement of ERISA rights described in ERISA §104(c).

(ECF No. 1 at 23–24.)

Additionally, while Suchin's allegation that he "told his spouse that his employer had informed him that his [LTD] coverage was 60% of his salary" (ECF No. 1 at 9) is too vague to support an inference of an affirmative misrepresentation, it does suggest that there was some miscommunication or failure of notice on Fresenius's part.  Viewing the facts in the light most favorable to Suchin, the Court can reasonably infer that Fresenius knew or should have known that failing to provide such basic information to plan participants could cause Suchin to "labor[] under a material misunderstanding of plan benefits" to his detriment.  *See Griggs*, 237 F.3d at 381.

Fresenius's alleged failure to provide Suchin with this information, if proven, would constitute a breach of its fiduciary duty.  *See Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 721 (8th Cir. 2014) (holding that allegations that the employer failed to provide an SPD, "if proven, show[s] that [the employer] breached its fiduciary duty to act in the interests of plan participants when it failed to provide [the beneficiary] with necessary information regarding enrolling in the Plan"); *Snitselaar v. Unum Life Ins. Co. of Am.*, Civ. No. 17-14-LRR, 2019 WL 279995, at *9 (N.D. Iowa Jan. 22, 2019) ("It is undisputed that Mount Mercy did not provide Snitselaar with the [SPD].

Accordingly, the court finds that Mount Mercy[] breached its fiduciary duty."); *Breyan*, 2013 WL 5536795, at *8 (holding that plaintiff adequately alleged breach of fiduciary duty when he alleged that the "Defendants failed to provide him with any written information regarding the Plan").

Finally, Fresenius's reliance on *Juric v. USALCO*, 659 F. Supp. 3d 619 (D. Md. 2023), is misplaced.  In that case, Juric alleged that misrepresentations by his employer led him to believe that he was entitled to continue receiving health insurance after his termination.  *Id.* at 625.  In dismissing Juric's breach of fiduciary duty claim, this Court first held that his claim was barred by *Korotynska* because it was but a "reformulation of his unsuccessful claim for benefits."  *Id.* at 628–29.  The Court went on to hold that even if the claim were not barred by *Korotynska*, it would still fail because Juric (1) failed to adequately allege that his employer was a fiduciary, and (2) failed to provide any specifics as to the alleged misrepresentations beyond a vague statement that the defendants "wrongfully misrepresented their intentions with respect to the Health Benefit Plan." *Id.* at 630–31 (alterations omitted).

*Juric* is distinguishable from this case.  For one, the Court has already explained that Suchin's claims are not barred by *Korotynska*.  Additionally, unlike the vague allegations made by Juric, Suchin has alleged a list of specific documents and pieces of information that Fresenius failed to provide him.  More fundamentally, Juric's theory of breach was premised on misrepresentations (which were not adequately alleged), whereas here Suchin has made allegations of specific, statutorily mandated pieces of information that Fresenius failed to provide.

### 4.  *Breach of Duty—Count II*

Suchin has also adequately pled a breach of fiduciary duty as to his life insurance plan. Although the allegations are sparser, Suchin does allege that Fresenius failed to provide him with plan documents including, inter alia:

- Contact information for plan administrators and trustees;

- "A statement identifying the circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide";

- The procedures for redress of denied claims; and

- The statement of ERISA rights described in ERISA §104(c).

(ECF No. 1 at 28–29.)

However, Suchin has not adequately alleged a breach of duty based on any outright misrepresentation. The closest thing to an allegation of a misrepresentation is Suchin's statement that "[w]hen Plaintiff went on-line to select the life insurance benefit, the benefit 'Basic Life' was stated as 'Salary x 2.'" (ECF No. 1 at 12.) The Complaint is wholly devoid of allegations as to when this "Salary x 2" statement occurred or who made the statement. Nevertheless, for the reasons stated above in the discussion of Count I, Suchin is not required to plead an affirmative misrepresentation, and Fresenius's failure to provide him with basic information about his life insurance policy, if true, would constitute a breach of its fiduciary duty to inform.

Having concluded that Counts I and II adequately allege a breach of duty, the Court will next turn to the three remedies that Fresenius has challenged in its Motion to Dismiss.

**C. Remedies**

*1. Reformation*

In Count I Suchin asks that the LTD benefit plan "be reformed to remove any limitation or cap on a monthly disability benefit and reduction for the receipt of social security disability

payments." (ECF No. 1 at 26.)  In Count II he requests that the life insurance plan "be reformed to remove any limitation on the life insurance benefit."  (*Id.* at 30.)

Fresenius argues that reformation is not an available remedy on the facts of the Complaint. (ECF No. 8-1 at 23.)  Suchin does not respond to this argument in his opposition briefing, and therefore his claim for reformation is arguably waived.  *See Muhammed v. Maryland*, Civ. No. ELH–11–3761, 2012 WL 987309, at *1 n.3 (D. Md. Mar. 20, 2012) ("Judges in this district have held that, by failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim.").

Even if Suchin's reformation argument were not waived, the reformation claim would be dismissed.  The power to reform a contract to prevent fraud is an available equitable remedy under § 502(a)(3).  *Cigna Corp. v. Amara*, 563 U.S. 421, 440 (2011).  But reformation is typically used "to reflect the mutual understanding of the contracting parties."  *Id.* at 443.  This is a "limited" remedy available "to correct a mutual mistake or to mitigate a fraud scheme."  *Cross v. Bragg*, 329 F. App'x 443, 454 (4th Cir. 2009).  Here, even viewing the facts in the light most favorable to Suchin, he has not plausibly alleged that he is entitled to contract reformation.

To begin with, failure to provide ERISA-mandated documents does not necessarily entitle a plaintiff to reformation.  *Knepper v. Volvo Grp. N. Am.*, Civ. No. ELH-18-02879, 2019 WL 4750337, at *18 (D. Md. Sept. 27, 2019); *see also Pierce v. Sec. Tr. Life Ins. Co.*, 979 F.2d 23, 30 (4th Cir. 1992) (rejecting the contention that a court can infer harm from a defendant's failure to provide ERISA-mandated disclosures).

Furthermore, Suchin has not adequately alleged fraud.[9]  "Fraud has a broader meaning in equity (than at law) and intention to defraud or misrepresent is not a necessary element."  *SEC v. Cap. Gains Rsch. Bureau*, 375 U.S. 180, 193 (1963) (quotation omitted).  But while the concept of fraud at equity is broad,  it is not boundless.  Relevant factors to determine whether the defendant committed equitable fraud include (1) whether the defendant breached a legal duty; (2) whether the defendant was unduly benefited or the plaintiff was injured; (3) whether there is information asymmetry in the defendant's favor; (4) whether the defendant misrepresented the benefits to which the plaintiff is entitled; and (5) whether the plaintiff reasonably relied on those misrepresentations after an investigation.  *See Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 348–349 (6th Cir. 2018).

A court in this Circuit has held that "failure to distribute [ERISA-mandated] documents alone does not constitute fraud."  *Blenko v. Cabell Huntington Hosp., Inc.*, Civ. No. 3:21-0315, 2021 WL 4721067, at *7 (S.D.W. Va. Oct. 8, 2021).  In cases where omissions were found to be fraudulent, the omissions were *themselves* misleading.  Take, for example, the facts of *Pearce*:

> Randy Pearce, a long-time employee of Chrysler[], was a participant in the Chrysler[] Pension Plan ("Plan"). Under the Plan's terms, Pearce had earned an early retirement supplement, called "30-and-Out benefits." He relied on the [SPD], provided by Chrysler to Plan participants, which stated he did not need to be "actively employed at retirement" to remain eligible for these benefits. But the SPD omitted an exclusionary clause contained in the Plan document itself, which said that an employee who was terminated was ineligible for the early retirement supplement. After Pearce was terminated, he applied for his retirement benefits and was denied the 30-and-Out benefits.

893 F.3d at 342.  In short, the defendant-employer in *Pearce* distributed an SPD regarding retirement benefits to its employees, but the SPD omitted a crucial condition of eligibility, which

---

[9] Suchin has not alleged mutual mistake so his reformation claim must rely on a theory of fraud.  *See Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 347 (6th Cir. 2018) (stating that reformation requires a showing either of mutual mistake or fraud).

created the misleading impression that there was no such condition.  On these facts, the Sixth Circuit held that the plaintiff had adequately pled that Chrysler's omission constituted equitable fraud.  *Id.* at 349.  Here, by contrast, because it is unclear what information (if any) Fresenius *did* provide about benefits, it is not apparent how Fresenius's failure to provide plan documents was itself misleading—and, as discussed above, Suchin has not adequately alleged that Fresenius made any affirmative misrepresentations during the period when his injury (the decision to forego purchasing additional coverage) accrued.

Further, even assuming that Fresenius's failure to provide ERISA-mandated documents can constitute equitable fraud, Suchin would still not be entitled to contract reformation, as there is no allegation that this fraud occurred *in the formation* of the LTD or life insurance contracts. *See Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166–67 (9th Cir. 2012) (rejecting a claim for reformation based on a misleading SPD when the SPD was created after the contract was drafted and there was no evidence that the SPD induced the plaintiffs to enter into the contract); *Bonner v. SYG Assocs.*, 498 F. Supp. 3d 859, 876 (E.D. Va. 2020) (holding that reformation of a retirement plan was not appropriate "where, as here, the basis for reformation is alleged fraud taking place apart from and after the creation of the Plan and the only party harmed by the alleged fraud is a party who did not participate in the negotiation of the 'mistaken' Plan term"); *see also* Restatement (Second) of Contracts § 166 (providing that reformation may be available when "a party's manifestation of assent *is induced* by the other party's fraudulent misrepresentation") (emphasis added).  Nor has Suchin alleged that the LTD or life insurance policies formed the basis of his employment agreement.  *Cf. Pearce*, 893 F.3d at 349 (stating that "the basis [of the plaintiff's] mutual agreement with Chrysler was the SPD").

Finally, Suchin has not joined New York Life as a defendant, although it was one of the parties to the LTD benefit contract, and he has not pointed the Court to (nor is the Court aware of) any authority suggesting that a court can reform a contract when one of the parties to the contract is not a party to the case and has had no opportunity to be heard in response.

A plaintiff seeking contract reformation under ERISA faces an uphill climb. *See Bonner*, 498 F. Supp. at 875 ("The Fourth Circuit has considered reformation under ERISA § [502](a)(3) on at least five occasions, each time declining the request"). Suchin has not shown that he is entitled to reformation, either with respect to his LTD or life insurance benefits.

### 2. *Equitable Estoppel*

Equitable estoppel is a "traditional equitable remedy" which operates to place the plaintiff "in the same position he would have been in had the representations been true." *Amara*, 563 U.S. at 441 (quotation omitted). It is an available remedy under ERISA § 502(a)(3). *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 182 (4th Cir. 2012), *overruled on other grounds by Rose*, 80 F.4th 488 (4th Cir. 2023).[10]

It does not appear that the Fourth Circuit has articulated a test for when equitable estoppel is an appropriate remedy under § 502(a)(3). However, several other circuits have had occasion to consider equitable estoppel claims under this provision. In reviewing how other circuits have discussed this remedy, the Court bears in mind that "[e]stoppel is an equitable doctrine invoked to avoid injustice in particular cases" and that the "hallmark of the doctrine is its flexible application." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984). While the exact

---

[10] As will be discussed in greater detail in the Court's discussion of surcharge, *Rose* dramatically limited the importance of *Amara* in the Fourth Circuit. However, the *Rose* decision focused on how *Amara* seemed to open the door to surcharge—a remedy that arguably was not "typically available in equity"—a door that the *Rose* panel thought was closed by later Supreme Court decisions. However, estoppel (unlike surcharge) is indisputably a typical equitable remedy. *See Amara* at 441. Thus, *Rose* does not undermine the continuing viability of estoppel under § 502(a)(3).

elements of equitable estoppel vary in different circuits, the Second Circuit has recently articulated the basics of an equitable estoppel claim:

> [T]o make a claim for estoppel under § 502(a)(3), a plaintiff must plausibly allege five elements: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, (4) an injustice if the promise is not enforced, and (5) extraordinary circumstances.

*Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 99–100 (2d Cir. 2020) (cleaned up).[11]

The "promise" element does not necessarily require an affirmative misrepresentation. "[C]onduct or language amounting to a representation of a material fact" can suffice, *Pearce*, 893 F.3d at 349–50 (quotation omitted), as can omissions that would reasonably induce reliance, *Silva*, 762 F.3d at 723–24.  Importantly, to satisfy the "reliance" element, the plaintiff must establish that the reliance was objectively reasonable under the circumstances.  *See id.* at 724.

Here, viewing the facts in the light most favorable to Suchin and drawing all reasonable inferences in his favor, the Complaint stumbles at the second element of an equitable estoppel claim.  Suchin fails to show reasonable reliance with respect to either Counts I or II.  On a liberal reading of the Complaint, Fresenius's failure to provide material plan information may suffice to satisfy the "promise" element.[12]  However, the Complaint does not contain any facts from which the Court can infer that Suchin *reasonably* relied on Fresenius's omissions about his benefits.

---

[11] The Sixth Circuit has imposed additional requirements in the case of estopping "unambiguous plan provisions."  In such a circumstance, the plaintiff must allege—in addition to the five elements stated above—"(6) a written representation; (7) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (8) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel."  *Pearce*, 893 F.3d at 350 (alterations omitted).  The Court declines to impose these extra requirements.  The Fourth Circuit has not adopted these elements, and a strict requirement of a written misrepresentation is in tension with the "flexible" nature of equitable estoppel that is a "hallmark of the doctrine."  *Heckler*, 467 U.S. at 59.  And in *McCravy*, the Fourth Circuit held that a plaintiff's equitable estoppel claim may be viable even when the plaintiff did not allege a specific written misrepresentation or deny that plan terms were unambiguous.  690 F.3d at 182.

[12] As the Court has already explained, Suchin has not adequately alleged an affirmative misrepresentation on Fresenius's behalf.

Suchin does not need to allege a specific misstatement to be entitled to equitable estoppel, so the fact that the Complaint does not plausibly allege specific misstatements at the time of the injury is not necessarily fatal to his claim. But the Court has no basis on which to infer that Suchin's reliance on Fresenius's omissions of material plan information was reasonable. The Court accepts as true—as it must—that Fresenius failed to provide him with an SPD and other important plan information. The Court also accepts as true that Suchin genuinely believed as of 2012 that he was entitled to LTD benefits worth 60% of his salary without any caps or offsets, and that nobody told him about the $10,000 per month cap. (*See* ECF No. 1 at 9–10.) But since the Complaint does not explain what information Suchin *was* provided about his benefits, it is unclear how he arrived at this belief. Thus, the Court lacks a basis for inferring that his reliance on this belief was reasonable. *See Knepper*, 2019 WL 4750337, at *18. Indeed, if Fresenius failed to provide Suchin with any information about the material terms of his LTD benefits, it is hard to see how Suchin could have arrived at *any* reasonable belief about what benefits he was entitled to.

The Court can speculate that Suchin, an accomplished doctor, may well have had a good reason for believing that his LTD benefits were 60% of his salary, but the Court's reasoning would be just that—speculation. The Complaint does cite to instances from 2021 in which Fresenius's employee benefits website indicated that the benefits were worth 60% of salary without any further qualifications (ECF No. 1 at 10–12). But the Complaint does not allege that this website contained similar information when Suchin first signed up for LTD coverage circa 2012, when Suchin would have been able to procure additional benefits. Again, the Court can speculate that if this misrepresentation existed in 2021 it could have also existed back in 2012, but speculation is not enough under *Twombly* and *Iqbal*.

Suchin's claim for estoppel as to his life insurance policy rests on an even flimsier foundation, because the only allegation of a misrepresentation is that at some unspecified point in time, an employee website stated that his life insurance benefits were "Salary x 2." (ECF No. 1 at 12).[13]  Without any additional allegations, the Court cannot infer whether this statement can be attributed to Fresenius or to Suchin's other employer, nor can the Court infer whether this statement occurred before or after Suchin's dementia diagnosis.

The Court recognizes that Suchin's ability to provide details as to the "who, what and when" of Fresenius's alleged misrepresentations is compromised—through no fault of his own—because of his dementia. (ECF No. 26 at 16.)  Given these circumstances, the Court does not require Suchin to provide a detailed account of Fresenius's misrepresentations at this stage of the litigation, before any discovery has commenced.  In its current form, the Complaint is not far from stating a viable claim for equitable estoppel, but it is missing key facts needed to raise the inference that Suchin reasonably relied on Fresenius's words or conduct "above the speculative level." *Twombly*, 550 U.S. at 555.  With respect to the LTD plan, Suchin has not alleged in the Complaint that, for instance, the misrepresentations on Fresenius's website in 2021 also existed in 2012, or that it was *Fresenius* (rather than his unidentified other employer) who told him that his benefits were worth 60% of his salary without any caps or limitations.  And with respect to his life insurance claims, he has not alleged that the "Salary x 2" statement occurred on a Fresenius-run website, nor has he alleged whether the statement occurred before his dementia diagnosis (when he may still have been able to purchase supplemental life insurance).  The Court does not mean to suggest that

---

[13] Suchin does allege that "[o]nly during the 2021 open enrollment period did Defendant's employee benefits website have information concerning the cap on life insurance benefits," implying that this information was lacking during previous years when Suchin might have the opportunity to supplement his life insurance. (*Id.* at 29.)  But with no plausible allegation as to what the website *did* say in prior years, it is not clear how any reliance on this lack of information could have been reasonable.

these specific allegations are necessary.  But there must be *some* kind of allegation that can allow the Court to infer that Suchin reasonably relied on Fresenius's words or conduct in arriving at his belief that he was entitled to 60% of salary in LTD benefits without offsets or caps and that his life insurance policy would be twice his salary without further qualifications.

Because Suchin fails to plead facts from which the Court could infer reasonable reliance, he has failed to show that he is entitled to equitable estoppel.  Accordingly, the Motion to Dismiss will be granted with respect to Suchin's requests for this remedy.

### 3.   *Surcharge*

The remedy of surcharge empowers equity courts "to provide relief in the form of monetary compensation for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment."  *Amara*, 563 U.S. at 441 (quotation omitted).  It is a "remedy aimed at holding the defendant to their promises when those promises engender good faith reliance by the plaintiff." *Rose v. PSA Airlines*, 80 F.4th 488, 496 n.5 (4th Cir. 2023).  Fresenius argues that the Fourth Circuit's holding in *Rose* has foreclosed the possibility of bringing a claim for surcharge under § 502(a)(3).  Because the Court is bound by the *Rose* decision, Suchin's claims for surcharge under Counts I and II will be dismissed.

To understand the import of *Rose*, some backstory is needed.  Recall that § 502(a)(3) is ERISA's "catchall" provision, which authorizes a plan participant to bring suit for injunctive or "other appropriate equitable relief" when other statutory provisions would not provide an adequate remedy.  For thirty years, the Supreme Court has read this provision to mean that remedies are limited to only "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."  *Mertens*, 508 U.S. at 256 (emphasis in original).  The "typically" limitation is important, because historically, in breach-of-trust cases,

equity courts were empowered to order broader types of traditionally *legal* relief (*i.e.*, money damages) that were *not* otherwise typically available in equity. *Id.*

Thus, under *Mertens* and its progeny, a § 502(a)(3) plaintiff was limited to relief that was typically awarded in equity, rather than the more expansive menu of remedies that were historically offered in the special instance of breach-of-trust cases. *See id.* at 258; *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 219 (2002) (stating that the court has "rejected the claim that the special equity-court powers applicable to trusts define the reach of § 502(a)(3)").

In the 2011 *Amara* decision, the Supreme Court appeared to adopt a more expansive view of the types of remedies that were typically available in equity. In dicta, the court seemed to broaden the types of equitable relief available under § 502(a)(3) by endorsing the availability of reformation, equitable estoppel, and surcharge. 563 U.S. at 440–42.

If *Amara* appeared to signal the start of a trend toward a broader view of § 502(a)(3), that trend was short-lived. Five years later, the Supreme Court reaffirmed that it has "long rejected the argument that equitable relief under Section 502(a)(3) means whatever relief a court of equity is empowered to provide in the particular case at issue," because in certain cases equity courts were historically empowered to grant legal remedies that were not "typically available in equity." *Montanile v. Bd. of Trs. of Nat'l Elevator Ind. Health Benefit Plan*, 577 U.S. 136, 147 (2016) (quotation omitted). *Montanile* cited *Amara* only in a footnote, where it characterized its discussion of § 502(a)(3) as "not essential to resolving that case" and stated that "our interpretation of 'equitable relief' in *Mertens*" and its progeny "remains unchanged" after *Amara*. *Id.* at 148 n.3.

Following *Amara*, the Fourth Circuit twice held that surcharge is an available equitable remedy under § 502(a)(3). *McCravy*, 690 F.3d at 181; *Peters v. Aetna Inc.*, 2 F.4th 199, 216 (4th Cir. 2021).

28

However, in the 2023 *Rose* decision, a panel of the Fourth Circuit determined that surcharge was no longer available in the wake of *Montanile*. Further, the panel determined it was not bound by the previous panel opinions in *Peters* and *McCravy* recognizing the availability of such a remedy. The ordinary rule in the Fourth Circuit is that "[w]hen published panel opinions are in direct conflict on a given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from [the Fourth Circuit] sitting *en banc* or the Supreme Court." *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004). An exception to this ordinary rule applies when prior panel decisions have been "undermined," but not overruled, by the reasoning of subsequent Supreme Court cases. *United States v. Banks*, 29 F.4th 168, 178 (4th Cir. 2022). In such a circumstance, a later panel is "not bound" to follow the earlier panel. *Id.*

In *Rose*, the panel considered *Peters* and found that its reasoning was inconsistent with *Montanile*, to which the *Peters* panel had not cited. The *Rose* panel therefore determined that it was not bound by *Peters* or *McCravy*. 80 F.4th 488, 504. *Rose* went on to conclude that surcharge was not "typically" available in equity cases but was rather available only in the special case of breach-of-trust cases. *Id.* at 503–04. Therefore, the Fourth Circuit reasoned, this remedy is not available under § 502(a)(3), at least in cases where the plaintiff cannot trace any unjust gains to specifically identified funds traceable to or in the possession of the defendant. *Id.* at 500, 503–04.

Suchin argues that the Court should disregard *Rose* because it conflicts with both *Amara* and earlier Fourth Circuit panel decisions. Neither the Fourth Circuit nor the Supreme Court have spoken with complete clarity on this issue, leaving this Court to contend with not only unclear precedent but also questions of weight. The Fourth Circuit was technically not bound by the dicta in *Amara*, though it was required to give it great weight. *See Myers v. Loudon Cnty. Pub. Sch.*, 418 F.3d 395, 406 (4th Cir. 2005). But the same is true of the footnote in *Montanile*, which was

arguably *itself* dicta.  Suchin cites to the thoughtful partial dissent in *Rose*, which persuasively argues that *Amara* (and thus *Peters* and *McCravy*) can be reconciled with *Montanile* by limiting the surcharge remedy to those cases where surcharge is sought against a fiduciary.  80 F.4th at 507 (Heytens, J., concurring in part and dissenting in part).  But this Court has no authority to disregard a directly controlling Fourth Circuit opinion even if this Court might have reached a different conclusion were it free to consider the issue on first impression.  And although Suchin is correct that generally one panel of the Fourth Circuit cannot overrule the decision of an earlier panel, the *Rose* panel considered this exact argument and held that the exception for cases inconsistent with subsequent Supreme Court decisions applied.  *Id.* at 504 (majority op.).  This Court is not entitled to disregard that determination either.

For these reasons, the Court is bound by the holding of *Rose* and is thus compelled to hold that surcharge is not an available remedy under § 502(a)(3).  Accordingly, the Complaint will be dismissed to the extent it seeks this remedy.[14]

It may seem anomalous that the Court finds that Suchin has plausibly alleged a breach of fiduciary duty, but nevertheless is not entitled to the three remedies at issue in the present Motion to Dismiss.  But the fact that a defendant violates ERISA "does not necessarily mandate" that the Court impose a remedy.  *Pender v. Bank of Am. Corp.*, 736 F. App'x 359, 369 (4th Cir. 2018) (quotation omitted); *see also Skinner*, 673 F.3d at 1164, 1165 (holding plaintiffs adequately alleged an ERISA violation but were not entitled to equitable relief).  Ultimately, the question for the Court when evaluating a Motion to Dismiss is not whether the pleadings adequately allege that the defendant violated the law, but rather whether the plaintiff has "state[d] a claim *upon which relief*

---

[14] In *Rose*, the Fourth Circuit dismissed the plaintiff's claims to the extent she sought surcharge, but remanded the case to the district court to consider whether the plaintiff properly alleged the alternative theory of unjust enrichment. 80 F.4th at 505.  Here, Suchin has not raised an unjust enrichment claim, so the Court makes no determination as to whether such a claim would be viable.

*can be granted.*" Fed. R. Civ. P. 12(b)(6) (emphasis added). The current Complaint is deficient and accordingly Counts I and II will be dismissed, albeit without prejudice with respect to Suchin's claims for reformation and equitable estoppel.[15]

## IV.   CONCLUSION

For the reasons stated above, the Court will grant in part Suchin's Surreply and Strike Motion (ECF No. 30) insofar as the Motion seeks leave to file a surreply, and deny it in part as moot insofar as it asks the Court to strike Fresenius's ripeness argument. The Court will grant in part Fresenius's Motion to Dismiss (ECF No. 8) as to Suchin's claims for reformation, equitable estoppel, and surcharge under Counts I and II of the Complaint. Suchin will be granted leave to amend with respect to his claims for reformation and equitable estoppel, but not with respect to his claims for surcharge.

A separate order will issue.

DATED this ___6th___ day of February, 2024.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
Chief Judge

---

[15] The Court observes that Suchin has also requested declaratory and injunctive relief, other equitable relief, attorney's fees, costs, and pre- and post-judgment interest for both Counts I and II. (ECF No.1 at 27, 30.) Neither the Complaint nor the briefing provides the Court with any elaboration as to what these forms of relief would entail or why Suchin is entitled to these forms of relief, especially in the absence of the Court's awarding reformation, equitable estoppel, or surcharge. Accordingly, these claims for relief will also be dismissed, without prejudice.