**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CRAIG SUCHIN,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. JKB-23-01243** |
| **FRESENIUS MEDICAL CARE HOLDINGS, INC.,** | * | |
| **Defendant.** | * | |

* * * * * * * * * * * *

**MEMORANDUM**

In this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, Plaintiff Dr. Craig Suchin alleges that his former employer, Defendant Fresenius Medical Care Holdings ("Fresenius") misrepresented the terms of his long-term disability ("LTD") and life insurance benefits, and failed to produce certain ERISA-mandated documents. In February 2024, this Court dismissed Counts I and II of Suchin's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 35.) Suchin subsequently filed the operative Amended Complaint. (ECF No. 40.)

Now pending before the Court is Fresenius's Partial Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 43.) The Motion is fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the following reasons, the Motion will be granted in part and denied in part. Suchin's claims for reformation will be dismissed with prejudice, but his claims for equitable estoppel will be permitted to proceed to discovery.

## I. Factual and Procedural Background

The Court already set out the factual allegations of this case in its February 6, 2024

Memorandum, and so will only briefly summarize them here. *Suchin v. Fresenius Med. Care Holdings, Inc.*, Civ. No. JKB-23-01243, 2024 WL 449322, at *1–3 (D. Md. Feb. 6, 2023). (ECF No. 35 at 2–5.) In short, Suchin alleges that, between 2012 and 2021, Fresenius—who was the plan sponsor and administrator for the LTD and life insurance plans—failed to provide ERISA-mandated documents about either plan, including summary plan descriptions ("SPDs), and that Fresenius made misrepresentations that had the effect of making plan benefits seem more generous than they in fact were. (Am. Comp. ¶¶ 17–180.) Relying on these misrepresentations and omissions, Suchin elected not to procure supplemental insurance, on the erroneous belief that his existing insurance would be sufficient. (*Id.* ¶¶ 80–81, 97, 162.) Suchin retired from his employment with Fresenius as a physician in 2021, after being diagnosed with behavioral frontotemporal dementia, a neurological disorder. (*Id.* ¶¶ 1–13.) As Suchin and Andrea—his wife and power of attorney—began the process of applying for benefits under Fresenius's LTD plan, they discovered that the benefits of that plan were far less generous than they had expected. They had expected LTD benefits worth 60% of his monthly salary, which would translate to about $23,000 per month, but instead learned that the LTD benefits were capped at $10,000 and were subject to further offsets for Social Security disability payments. (*Id.* ¶¶ 14–140.) Suchin and Andrea also inquired about the terms of Suchin's life insurance policy and realized that his life insurance was also much less generous than anticipated—worth only $400,000, as opposed to the approximately $1.12 million they had believed they were due. (*Id.* ¶¶ 141–180.) Suchin also alleges that Fresenius failed to provide certain ERISA plan documents that his counsel had requested multiple times, beginning in April 2022. (*Id.* ¶¶ 181–213.)

Both the original Complaint and the Amended Complaint contain three counts. Counts I and II allege that Fresenius breached its fiduciary duty to Suchin with respect to the LTD and life

insurance plans, respectively, and seek equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).[1] (Am Comp. ¶¶ 235–315.) Count III alleges that Fresenius failed to provide statutorily mandated documents and seeks damages pursuant to ERISA § 502(c)(1)(B).[2] (*Id.* ¶¶ 316–331.)

In February 2024, the Court granted Fresenius's Motion to dismiss Counts I and II of the Complaint. In reaching that conclusion, the Court held that (1) Count II (relating to Suchin's life insurance policy) was ripe for adjudication; (2) Counts I and II were properly brought under ERISA § 502(a)(3) rather than § 502(A)(1)(B); (3) Suchin adequately alleged that Fresenius was a fiduciary with respect to the LTD and life insurance plans; and (4) Suchin adequately alleged that Fresenius breached its fiduciary duties with respect to both plans by failing to provide him with SPDs and other ERISA-mandated plan documents. (ECF No. 35 at 5–19.) Nothing in the Amended Complaint provides any reason for the Court to revisit these holdings, and this Memorandum will proceed on the assumption that these issues have been resolved for the purposes of this stage of the litigation.

Nevertheless, the Court previously dismissed Counts I and II on the grounds that Suchin failed to show he was entitled to the requested remedies of reformation, equitable estoppel, or surcharge. (*Id.* at 19–30.) This Memorandum will proceed directly into analyzing whether the Amended Complaint now adequately states a claim for equitable estoppel or reformation.[3] The Court will incorporate Suchin's new or revised allegations from the Amended Complaint in its analysis where relevant. As will be explained, the Amended Complaint now adequately alleges

---

[1] As in the Court's earlier Memorandum, the Court will refer to ERISA provisions by their designation in the ERISA statute rather than by their United States Code citation, "in keeping with the trend in this practice area." *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 494 n.2 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1346 (2024).

[2] Fresenius has not moved to dismiss Count III.

[3] Suchin's claim for surcharge was previously dismissed with prejudice (*see* ECF No. 35 at 31), so the Court does not discuss this remedy any further here.

that Suchin is entitled to equitable estoppel, but fails to show that Suchin is entitled to reformation.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quotation omitted). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). To survive a motion to dismiss, the complaint "must include 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. Discussion

In enacting ERISA, Congress created a comprehensive framework to protect participants and beneficiaries of employee benefit plans through a complex set of enforcement regimes. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). ERISA is in many ways a highly technical statute, and when ERISA's technical provisions are at issue, this Court enforces them in strict accordance with the statutory text. But Congress also chose to incorporate equitable principles directly into the statute by authorizing plaintiffs to sue for "other appropriate equitable relief" when a defendant violates the statute and no other provision provides an adequate remedy. *Korotynska v. Metro. Life Ins. Co.*, 474 F. 3d 101, 104–105 (4th Cir. 2006) (citing ERISA § 502(a)(3)). This provision authorizes courts to award "typically" equitable forms of relief. *Rose v. PSA Airlines*, 80 F.4th 488, 500 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1346 (2024). When sitting as a court of equity under § 502(a)(3), the Court recalls the Supreme Court's emphasis on "the need for flexibility and avoiding mechanical rules," following in "a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute

legal rules, which, if strictly applied, threaten the evils of archaic rigidity." *Pender v. Bank of Am. Corp.*, 736 F. App'x 359, 367–68 (4th Cir. 2018) (quoting *Holland v. Florida*, 560 U.S. 631, 650 (2010)).

The Court will bear these equitable principles in mind as it discusses the two remedies at issue in the instant Motion to Dismiss.

**A. *Equitable Estoppel***

Equitable estoppel is a "traditional equitable remedy" that operates to place the plaintiff "in the same position he would have been in had the representations been true." *Cigna Corp. v. Amara*, 563 U.S. 421, 441 (quotation omitted). It is an available remedy for a plaintiff alleging breach of fiduciary duty under ERISA § 502(a)(3). *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 182 (4th Cir. 2012), *overruled on other grounds by Rose*, 80 F.4th at 503–04. To state a claim for equitable estoppel under § 502(a)(3), a plaintiff must plausibly allege (1) a promise, (2) reasonable reliance on that promise, (3) injury caused by the reliance, (4) injustice if the promise is not enforced, and (5) the presence of extraordinary circumstances justifying equitable relief. *See Sullivan-Mestecky v. Verizon Commc'ns*, 961 F.3d 91, 99–100 (2d Cir. 2020); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 724 (8th Cir. 2014).

Suchin has adequately alleged these elements here, both with respect to the LTD plan and the life insurance plan. Starting with the "promise" element, the Amended Complaint now adequately alleges that Fresenius made a promise to Suchin by stating, on its employee website from 2012 through 2020, that Suchin had LTD benefits worth "60% of his salary." (Am. Comp. ¶¶ 88–91, 101.) Similarly, Suchin alleges that Fresenius's website stated that his life insurance benefits were "Salary x 2," with no mention of any cap or limitation, from 2012 through 2020. (*Id.* ¶¶ 151–53.) These allegations, which were not present in the original Complaint, suffice to

elevate Fresenius's alleged communications from the realm of omission to the realm of affirmative misrepresentations.[4] It is at least plausible that these statements constituted misrepresentations by failing to notify beneficiaries and participants that these benefits were subject to various offsets and caps. As the Court previously explained, a plaintiff can satisfy the "promise" element by pointing to misleading omissions rather than affirmative misrepresentations (*see* ECF No. 35 at 16 (citing *Dawson-Murdock v. Nat'l Counseling Grp. Inc.*, 931 F.3d 269, 279 (4th Cir. 2019)), but usually a plaintiff will have a stronger case when, as here, he can point to both omissions *and* affirmative misrepresentations. Additionally, because the Amended Complaint no longer contains confusing references to Suchin's "joint employer," it can now be reasonably inferred that Fresenius—not some unknown party not before the court—was the source of the alleged misrepresentations and omissions. (*Compare* Comp. ¶¶ 2, 9, 64 *with* Am. Comp. ¶¶ 2–5, 81.)

Next, Suchin has adequately pled that his reliance on Fresenius's misstatements—coupled with its failure to provide plan documents—was reasonable. Previously, the Court held that the original Complaint provided no basis for the Court to infer that Suchin's reliance was reasonable, because without any plausible allegations as to what Fresenius had told him about the plan, it was not clear how Suchin arrived at his beliefs about the terms of his LTD or life insurance benefits. (ECF No. 35 at 25.) But the Amended Complaint, as the Court has explained, now plausibly alleges at least one affirmative misrepresentation each with respect to the LTD and life insurance

[4] Fresenius argues that these statements cannot give rise to liability because Suchin has failed to show that Fresenius was acting as a fiduciary when it made the statements. (ECF No. 43-1 at 13.) To be sure, in order to prove breach of fiduciary duty, "a plaintiff must show that the defendant was acting in a fiduciary capacity when it made the representations[.]" *Juric v. USALCO, LLC*, 659 F. Supp. 3d 619, 629 (D. Md. 2023) (quotation omitted). But it is well established that "[a] plan administrator . . . acts in a fiduciary capacity when explaining plan benefits and business decisions about plan benefits to its employees." *In re Unisys Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (quotation omitted) (second alteration in original); *see also Deschamps v. Bridgestone Americas, Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 277 (6th Cir. 2016) ("An employer may act in a fiduciary capacity when making misrepresentations to its employees about their benefit plan.") (cleaned up).

plans, and that he was not provided with the plan documents that would have cleared up these misrepresentations. The Fourth Circuit has repeatedly held, in non-ERISA contractual disputes, that the question of whether reliance was reasonable is ordinarily a factual issue that must be decided at trial. *Gitter v. Cardiac & Thoracic Surgical Assocs, Ltd.*, 419 F. App'x 365, 370–71 (4th Cir. 2011) (citing *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 834 (4th Cir.1999), and *Tidewater Equipment Co. v. Reliance Ins. Co.*, 650 F.2d 503, 506 (4th Cir.1981)); *see also Brooks v. Mortgage Investors Corp.*, Civ. No. WDQ-13-1566, 2015 WL 926123, at *6 (D. Md. Mar. 3, 2015) ("Whether [plaintiff's] reliance was 'reasonable' is a question for the jury."). At this stage, Suchin need not prove that his reliance was reasonable; he need only plead plausible facts from which the Court can infer reasonable reliance. Reasonableness is a fact-intensive inquiry that cannot be decided on the pleadings when, as here, a plausible allegation of reasonable reliance has been made.[5] Viewing the facts in the light most favorable to the plaintiff, the Court cannot conclude that as a matter of law Suchin's reliance on Fresenius's misstatements—coupled with the alleged omissions—was unreasonable.

Turning to the injury prong, the Court has already held—and continues to hold—that Suchin's alleged decision to forgo procuring supplemental insurance in reliance on Fresenius's actions is a cognizable injury under ERISA. (ECF No. 35 at 9 (citing *Sullivan-Mestecky*, 961 F.3d at 103 n.44).)

---

[5] Fresenius argues that Suchin's reliance was unreasonable because he does not plead facts showing diligence (*see* ECF No. 43-1 at 15–16), and cites several cases in which courts have suggested that a plaintiff must exercise some degree of diligence in investigating plan terms in order to show reasonable reliance. (ECF No. 45 at 11–12.) Notably, the cases Fresenius cites were all decided at the summary judgment stage and do not purport to require plaintiffs to make a showing of diligence in the complaint. *Sullivan-Mestecky*, 961 F.3d at 95; *Jones v. Int'l Bus. Machines Corp.*, Civ. No. 1:19-00251-RP, 2020 WL 6729088 (W.D. Tex. Nov. 15, 2020), *report and recommendation adopted*, 2020 WL 8361930 (W.D. Tex. Dec. 29, 2020). Assuming—without deciding—that in the circumstances of this case Suchin must make some showing of diligence, the proper stage to demand such a showing would be at summary judgment, after the parties have had the benefit of discovery, rather than on a motion to dismiss.

As for injustice, Suchin alleges that Fresenius created a pervasive information asymmetry by failing to provide him with SPDs and other plan documents, such that "Defendant was the only party who knew the true facts concerning the [LTD] coverage and Plaintiff could not ascertain those facts," and likewise "Plaintiff did not and could not know the true facts about the life insurance coverage." (Am. Comp. ¶¶ 92–96, 149, 158, 160.) Now, through no fault of his own, Suchin faces a debilitating illness and is reliant in large part on his employment benefits to support himself and his family. Had he known that his benefits were much less generous than he anticipated, Suchin claims, he would have purchased supplemental insurance. Now, however, it is too late to do so. (Am Comp. ¶¶ 99, 100 162–64.) If Suchin's account is true, then it would be unjust to deny him relief. *See Sullivan-Mestecky*, 961 F.3d at 101 ("It would be unjust to allow these losses and forbearances, traceable to [the defendant's] gross negligence, to be borne by [the plaintiffs], both of whom believed [the defendant's] repeated misrepresentations.").

Turning to the last element, the Court finds that the allegations in the Amended Complaint constitute extraordinary circumstances. Taking Suchin's allegations as true—as the Court must at this stage—Fresenius was at best grossly negligent in failing to provide even the most basic ERISA-mandated documents, and at worst intentionally deceptive. Of course, the evidence unearthed during discovery may belie Suchin's version of events. But on the facts alleged in the Complaint, Fresenius's failure to provide plan documents, coupled with the misleading statements on its website that allegedly induced Suchin to forgo purchasing additional coverage, constitutes extraordinary circumstances. *See Sullivan-Mestecky*, 961 F.3d at 101 (holding that an employer's "gross negligence" in making repeated misrepresentations about ERISA plan terms sufficed to establish extraordinary circumstances).[6]

---

[6] Fresenius argues that Suchin has failed to show extraordinary circumstances because the Amended Complaint does not show acts of intentional wrongdoing or bad faith, and cites to cases that assumed such

Finally, the Court considers Fresenius's argument that Suchin's claim for equitable estoppel with respect to the LTD policy is facially defective because he seeks to estop unambiguous plan terms.[7] The Fourth Circuit has held that "[b]ased on the clear precedent from this Circuit and others, the doctrine of equitable estoppel cannot be used to require the payment of benefits that conflicts with the express, written terms of the Plan." *Ret. Comm. of DAK Americas LLC v. Brewer*, 867 F.3d 471, 485 (4th Cir. 2017) (citing *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 57 (4th Cir. 1992)). Here, Suchin does not deny that his requested remedy would result in a payment that would be at odds with the unambiguous terms of the LTD policy.

The Court recognizes that the Fourth Circuit has cast its prohibition on the use of equitable estoppel to vary unambiguous plan terms in broad language. But none of the Fourth Circuit's cases—nor the cases to which the court in *DAK Americas* cited—involved a plaintiff who, like Suchin, allegedly never received the plan terms in the first place. *See* 867 F.3d at 484–85.[8] To be sure, ERISA expresses Congress's "emphatic preference for written agreements." *DAK Americas*,

---

a showing to be necessary. (ECF No. 43-1 at 20–21.) However, the cases on which Fresenius relies predate *Sullivan-Mestecky*, which expressly rejects the proposition that a plaintiff must show a defendant's "intentional inducement" to establish extraordinary circumstances. 961 F.3d at 101.

[7] Suchin need not overcome this obstacle in his request for equitable estoppel with respect to his life insurance policy in Count II. The terms of the life insurance policy are not in the record. Fresenius argues that Suchin's equitable estoppel claim in Count II should be dismissed because "the Fourth Circuit does not allow the use of estoppel to modify plan terms through informal written statements" (ECF No. 43-1 at 28), but without the plan in the record the Court has no way of determining whether granting this remedy would amount to a modification of the plan terms, or if it would instead hold Fresenius to a reasonable interpretation of ambiguous plan terms. *See Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 782 (1st Cir. 2014) (observing that courts are more willing to grant equitable estoppel with respect to "statements that *interpret* the plan" as opposed to "statements that would *modify* the plan" (emphasis in original)). That said, even assuming Suchin's requested relief would be at odds with the life insurance plan's unambiguous terms, the Court would not hold that Suchin's claim for equitable estoppel is barred as a matter of law, for the reasons discussed above.

[8] For similar reasons, *Mello v. Sara Lee Corp.*, 431 F.3d 440, 445–46 (5th Cir. 2005), on which Fresenius also relies, is distinguishable. In that case, unlike here, there was no allegation that the plaintiff was never provided the plan documents.

867 F.3d at 484 (quotation omitted). But ERISA's policy of written agreements is predicated on the assumption that employers will provide statutorily mandated plan information to their employees. When an employer provides such written information, then usually it is inherently unreasonable for an employee to rely on informal statements that contradict it. *See Livick v. The Gillette Co.*, 524 F.3d 24, 31 (1st Cir. 2008) ("[A] plan beneficiary might reasonably rely on an informal statement interpreting an *ambiguous* plan provision; if the provision is clear, however, an informal statement in conflict with it is in effect purporting to *modify* the plan term, rendering any reliance on it inherently unreasonable." (emphasis in original)). That said, to hold that estoppel cannot vary unambiguous plan language even when the defendant never provided the plaintiff with that language would be to defeat ERISA's policy of "requiring the disclosure and reporting" of plan information "to participants and beneficiaries." ERISA § 2(b). ERISA is intended to ensure that there is "an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a scheme that is built around reliance on the face of written plan documents." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). That scheme is frustrated when an employer fails to provide any of those written plan documents to its employees. In such an instance, the rationale behind forbidding reliance on informal communications melts away.

A plan document might be a model of clarity and eloquence, but that is of no help to employees if they have no way to read that plan. If Defendant's reading of the caselaw is correct, however, an employer could write a crystal-clear plan document, lock it in a dusty file cabinet, and then falsely claim to its employees to be offering much more generous benefits. All the while, the employer would be secure in the knowledge that it would never be held bound to those misrepresentations because of the secret plan document it kept under lock and key. Neither the

text of ERISA nor the caselaw requires this Court, sitting in equity, to adopt a result that would frustrate the entire purpose of the statute and lead to manifest unfairness. *See Holland*, 560 U.S. at 650 (2010) ("The flexibility inherent in equitable procedure enables courts to meet new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices." (cleaned up)).

For these reasons, the Court concludes that Suchin has adequately pled that he is entitled to equitable estoppel in Counts I and II.[9]

**B. *Reformation***

As the Court previously explained, reformation is an available remedy under ERISA § 502(a)(3). (ECF No. 35 at 20 (citing *Amara*, 563 U.S. at 440).) To plead reformation, a plaintiff must either show the existence of a mutual mistake between the contracting parties at the time of formation, or else plead that the defendant engaged in fraud. *See Cross v. Bragg*, 329 F. App'x 443, 454 (4th Cir. 2009). Suchin proceeds on a theory of fraud.

The Court held that the original Complaint failed to show entitlement to reformation, because (1) Suchin failed to plead the existence of equitable fraud, (2) even if there were fraud, he failed to plead that the fraud occurred in the formation of the contract, and (3) he failed to join New York Life Group Benefit Solutions ("New York Life") as a party. (ECF No. 35 at 19–23.)

[9] The Court has previously declined to impose the Sixth Circuit's requirement that a plaintiff seeking to estop unambiguous plan terms must also show (in addition to five elements similar to the ones analyzed above) "(6) a written representation; (7) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (8) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel." (ECF No. 35 at 24 n.11 (quoting *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 350 (6th Cir. 2018).) However, even if the Court were to require the pleading of these elements, the Court would find that they are met here. Suchin has alleged that Fresenius made written representations on its website. Next, Suchin allegedly had no access to the plan terms; thus, without access to those terms, he had no practical ability to calculate his individual benefits, no matter how clear the plan terms might have been. And the Court has already explained that Suchin has shown the presence of extraordinary circumstances.

As explained above, the Amended Complaint plausibly alleges that Fresenius's actions constituted gross negligence, which may constitute fraud in equity. *See Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 348 (6th Cir. 2018). However, the Amended Complaint still fails to show that the alleged fraud occurred in the formation of the contract. For this reason, Suchin's claim to reformation will be dismissed.

The Court previously held that reformation for fraud is an available remedy only when there is fraud *in the formation* of the contract, such that the plaintiff's assent to the contract was induced by his unilateral mistake about the contract's terms. (ECF No. 35 at 22 (citing *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166–67 (9th Cir. 2012); *Bonner v. SYG Assocs.*, 498 F. Supp. 3d 859, 876 (E.D. Va. 2020); and Restatement (Second) of Contracts § 166).) *See also Amara*, 563 U.S. at 450 (Scalia, J., concurring) ("Reformation is meant to effectuate mutual intent at the time of contracting, and that intent is not retroactively revised by subsequent misstatements."); *Knepper v. Volvo Grp. N. Am.*, Civ. No. ELH-18-02879, 2019 WL 4750337, at *18 (D. Md. Sept. 27, 2019) ("[P]lan reformation requires a showing of fraud or mistake in the formation of the contract."). In short, nothing in the Amended Complaint shows that Suchin's assent to the LTD or life insurance plans was induced by fraud; instead, the Amended Complaint is wholly silent as to when and how these contracts were formed, and only alleges misrepresentations *after* Suchin already agreed to be bound by the terms of those plans. Reformation is not available on these facts.

Suchin's arguments to the contrary are unpersuasive. He cites to *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 349 (6th Cir. 2018), which held that a plaintiff was not categorically ineligible for reformation notwithstanding that he did not show that there was any fraud in the formation of the ERISA plan at issue. *Pearce* is distinguishable because in that case

the plaintiff had no access to the plan document and instead relied on the SPD—which contained misrepresentations—as the basis of his agreement with his employer. *Id.* Thus, *Pearce* still relied on the premise that the fraud must be in the formation of the contract; it simply held that in the circumstances of that case the contract at issue was the SPD rather than the underlying plan policy. Here, by contrast, Suchin does not allege that he was induced to enter into an agreement because of a misleading SPD; on the contrary, he alleges he was never given an SPD in the first place. Suchin's reliance on *Baker v. Save Mart Supermarkets*, 684 F. Supp. 3d 980, 991 (N.D. Cal. 2023) is similarly unavailing. In that case the court implicitly required that the plaintiffs' assent be induced by fraud—it simply found that the relevant agreement was not the underlying ERISA plan document but rather the plaintiffs' agreement to retire in reliance on misrepresentations regarding their retirement benefits. Finally, Suchin cites to *Sullivan-Mestecky* and *Silva*. Neither is persuasive—*Sullivan-Mestecky* held that a plaintiff plausibly pled entitlement to reformation, but the court did not analyze the question of whether the alleged fraud needed to occur in the formation of the contract. 961 F.3d at 103–04. And *Silva* merely held that a plaintiff "*may* be able to show mutual mistake or fraud of one party and the mistake of the other" but reached no conclusion as to whether the showing had in fact been made. 762 F.3d at 723 (quotation omitted) (emphasis added).

Moreover, the Court's prior holding in its February 6, 2024 Memorandum constitutes the considered judgment of the Court and Suchin presents no new facts or arguments that lead the Court to change its conclusions. "When a trial court applies the law-of-the-case doctrine to its own rulings, the doctrine operates not as an inexorable command but rather as a flexible tool of judicial administration that permits a court to balance the competing interests of correctness and finality." *Noel v. PACCAR Fin. Corp.*, 568 F. Supp. 3d 558, 566 (D. Md. 2021) (quotations and internal citations omitted). The Court does not rigidly adhere to its prior decisions, but upon a

reexamination of the briefs and the relevant legal authorities, the Court continues to hold that reformation under ERISA § 502(a)(3) is unavailable when, as here, the alleged fraud was subsequent to and unrelated to the plaintiff's assent to the contract. Accordingly, Suchin's claims for reformation will be dismissed, with prejudice.[10]

## IV. Conclusion

For the foregoing reasons, Fresenius's Partial Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 43) will be granted in part, with respect to Suchin's claims for reformation, and denied in part, with respect to Suchin's claims for equitable estoppel. A separate order will issue.

DATED this 22 day of July, 2024.

BY THE COURT:

James K. Bredar

James K. Bredar
United States District Judge

[10] The Court previously expressed doubts about the propriety of entertaining an action for reformation in the absence of New York Life. (ECF No. 35 at 23.) Those concerns remain, as Suchin has not added New York Life as a defendant in the Amended Complaint; however, on the limited record before the Court at this early stage in the litigation, the Court is not well positioned to determine whether New York Life must in fairness be joined as a party to this case. In any event, Suchin correctly observes that the proper procedure for litigating that issue would be through a motion under Rule 12(b)(7), rather than under 12(b)(6). (ECF No. 44 at 27 n.2.) For these reasons, the Court does not rely on the absence of New York Life in reaching its conclusion that Suchin's reformation claims must be dismissed.